UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JAMES EARL HILL,

                       Petitioner,

v.

CALVIN JOHNSON, et al.,

                       Respondents.

Case No. 2:98-cv-00914-KJD-DJA

**ORDER**

     Petitioner James Earl Hill, a Nevada prisoner, has filed a counseled second-amended petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 135.) Currently before the Court is Respondents' motion to dismiss Hill's second-amended petition and Hill's motion for an evidentiary hearing. (ECF Nos. 150, 156.) In their motion to dismiss, Respondents argue that Hill's second-amended petition contains claims that are not cognizable, unexhausted, and/or procedurally barred. (ECF No. 150.) And in his motion for an evidentiary hearing, Hill argues that an evidentiary hearing is required so he can prove his allegations of good cause and prejudice under *Martinez*, based on the State's suppression of evidence in violation of *Brady*, and his actual innocence under *Schlup*. (ECF No. 156.) For the reasons discussed below, the Court grants the motion to dismiss, in part, and denies the motion for an evidentiary hearing.

I.     **FACTUAL AND PROCEDURAL HISTORY**

     In its order affirming the denial of Hill's state habeas petition, the Nevada Supreme Court described the crime, as revealed by the evidence at Hill's trial, as follows:

> On March 8, 1983, at 11:00 p.m., Hill and [co-defendant Brian Keith] Marshall kicked in the front door to an apartment occupied by [Leroy and Altonia] Matthews. The couple was in bed, and Altonia had already fallen asleep. She was fifty-six years old and confined to a wheelchair due to paralysis on her left side resulting from a stroke.

After hearing the crash of the front door, Leroy ran to the bedroom doorway and saw two young men coming into the apartment toward the bedroom. Leroy slammed the bedroom door closed and pushed a dresser against it, attempting to barricade himself and his wife inside. When Leroy discovered that he could not keep the intruders out, he went to the bedroom window, removed a stick used to lock the window shut ("window stick"), and placed the window stick on the bed. He opened the window and put his head outside when he encountered Marshall, who had come around the building to meet Leroy at the window. Marshall was carrying a sawed-off pool cue stick ("cue stick"); however, Leroy mistook it for a gun. Marshall threatened to "blow [Leroy's] head off" if he went out the window. Therefore, Leroy retreated back into his bedroom. Marshall apparently went back inside to assist Hill in pushing the bedroom door open and overpowering Leroy's barricade.

Once Hill and Marshall were inside the bedroom, Altonia awoke to the commotion. She asked what was happening, and Hill hit her hard on her forehead with his fist, exclaiming, "Shut up, Bitch!" At this time, Marshall demanded the television, jewelry, and money. Leroy responded that he and his wife did not have any of those items.

Marshall then coaxed Leroy out of the bedroom and into the living room. Once Leroy followed Marshall, he realized the item in Marshall's hand was not a gun as he had thought; rather, it was the cue stick. Therefore, Leroy attempted to grab the cue stick from Marshall, and the two struggled and fought over the cue stick until they eventually reached the kitchen, located near the front door. Leroy would not let go of the cue stick, and Marshall hit him with a fist. Leroy then tripped and fell on the floor. Marshall climbed on top of Leroy and started choking him with the cue stick across his neck. Leroy later testified that Marshall never left his presence throughout the entire ordeal. He further testified that he was positive Marshall was the man with whom he struggled, not Hill. This is supported by the fact that Leroy recognized Marshall and Hill from the neighborhood prior to March 8, 1983. Also, at trial, other testimony was presented that Hill and Marshall looked nothing alike and could not easily be mistaken for each other. Hill has a much darker complexion than Marshall and is about five or six inches shorter than Marshall.

In the meantime, Hill was left in the bedroom with Altonia. Leroy heard his wife screaming in great pain and yelling, "Why are you doing that to me? Don't do that to me!" Later it was discovered that Hill had beat her up and sexually assaulted her by deeply and repeatedly thrusting a stick, presumably the window stick, inside her anal opening with great force. Eventually, Marshall yelled to Hill to leave the premises. Before leaving, Marshall threatened Leroy that if he told the police, he was as good as dead. Marshall and Hill then left the apartment.

Leroy went into the bedroom to discover his wife beaten up and bloody, lying on the floor. He also saw the window stick lying on the bed. Leroy placed the window stick back in the window. Leroy put Altonia in her wheelchair and moved her into the living room where he carried her to the couch. He got cold towels and attempted to attend to her wounds. Leroy then moved Altonia to the floor because she was in such pain; thereafter, she again requested to be placed on the couch.

Leroy testified that he did not realize how injured she was until she told him that she thought she was dying. Because the couple did not own a phone, Leroy was forced to leave his injured wife and run several blocks to his sister-in-law's house to call an ambulance. Additionally, because Marshall lived nearby and Leroy feared another confrontation, Leroy had to proceed a few blocks out of his way to get to the phone.

> [FN1] Inexplicably, there was a four-hour delay between the time Marshall and Hill left the Matthews' apartment at about 11:30 p.m. and the time when the ambulance was called at 3:30 a.m. Leroy testified that he delayed only about fifteen to twenty minutes after the two men left. Given the duress he was under, Leroy likely delayed longer than he thought he had, attempting to comfort his wife. Additionally, running to his sister-in-law's house may have taken more time than he realized.

Afterward, the ambulance and the police arrived at the Matthews' residence, and Altonia was transported to the hospital.

On March 10, 1983, Altonia died from her injuries. Dr. James Clarke, the medical examiner, performed an autopsy. He later testified at trial that Altonia's external injuries included deep lacerations on her forehead penetrating all the way to the bone. She had severe bruising, including a black eye, and several broken teeth. Altonia additionally suffered from deep cuts to her perineum (the area between her vaginal and anal openings) so severe that there existed only one common opening. Dr. Clarke testified that this injury resulted from a sharp-ended stick, such as the window stick, being thrust inside her with great force at least four or five times.

Dr. Clarke further testified as to Altonia's internal injuries. Before she died, Altonia underwent surgery to repair her abdomen and remove her sigmoid colon (the part of the large intestine that connects the colon with the rectum) because they were perforated by the same object that tore her perineum. There was damage to her kidney and hemorrhaging in the kidney area. Dr. Clarke informed the jury that the object used to assault Altonia was thrust into her at least fourteen inches deep in order to reach the kidney from her anal opening.

Dr. Clarke testified that the cause of Altonia's death was peritonitis (inflammation of the abdominal surfaces) and atelectasis (combination of the injuries and shock causing the lungs to collapse) due to someone thrusting a long sharp object, likely the window stick, into her rectum.

On March 13, 1983, after police investigations led to Marshall and Hill as suspects, Marshall was arrested. He made two voluntary statements to the police, apparently blaming Hill for the sexual assault, while admitting his involvement in the other crimes committed on the Matthews. Later that day, Hill was also arrested, and he, too, made voluntary statements to the police admitting his involvement, but insisting that Marshall committed the sexual assault on Altonia.

(ECF No. 145-38 at 3–7.)

A jury found Hill guilty of burglary, attempted robbery with use of a deadly weapon, attempted robbery, battery with use of a deadly weapon, sexual assault with use of a deadly weapon, and first-degree murder with use of a deadly weapon. (ECF No. 143-11.) A three-judge panel imposed a death sentence for the first-degree murder conviction. (ECF No. 143-34.) The state court sentenced Hill as follows for his other convictions: 10 years for burglary; 7.5 years with a consecutive sentence of 7.5 years for attempted robbery with the use of a deadly weapon; 7.5 years for attempt robbery; 10 years for battery with use of a deadly weapon; and life with a consecutive life sentence for sexual assault with the use of a deadly weapon. (ECF No. 143-49.) The judgment of conviction was entered on December 21, 1983. (*Id*.)

Hill appealed his judgment of conviction. (ECF No. 143-47.) The Nevada Supreme Court affirmed on September 4, 1986. (ECF No. 144-22.) Remittitur issued on September 23, 1986. (ECF No. 144-23.) The United States Supreme Court denied certiorari. (ECF No. 144-41.)

Hill filed a *pro se* state habeas petition on September 25, 1986. (ECF No. 144-24.) The state court denied the petition. (ECF No. 144-30.) On June 29, 1987, the Nevada Supreme Court dismissed the appeal without prejudice as untimely, ordering the state court to hold an evidentiary hearing and appoint counsel for Hill if Hill elected to refile his petition. (ECF No. 144-53.) Hill filed two more *pro se* state habeas petitions on March 18, 1987, and July 27, 1987, respectively. (ECF Nos. 144-44, 144-55.) The state court appointed counsel, and counsel filed a supplemental petition and points and authorities. (ECF Nos. 145-2, 145-3, 145-8.) Following an evidentiary hearing, the state court denied Hill post-conviction relief. (ECF Nos. 145-10, 145-15.) Hill appealed, and the Nevada Supreme Court affirmed on February 26, 1998. (ECF No. 145-38.) The Nevada Supreme Court then denied Hill's petitions for rehearing. (ECF Nos. 145-41, 145-44.) The

United States Supreme Court denied certiorari. (ECF No. 145-47.) Remittitur issued February 19, 1999. (ECF No. 145-49.)

Hill's *pro se* federal habeas petition was filed on June 16, 1998. (ECF No. 1 at 1.) This Court appointed counsel to represent Hill. (*Id*. at 2.) Hill filed his counseled first-amended federal habeas petition on November 1, 1999. (*Id*. at 5.) Respondents moved to dismiss the first-amended petition on February 10, 2000. (*Id*. at 6.) On August 27, 2001, this Court granted Respondents' motion to dismiss, in part, regarding the lack of exhaustion but denied the motion without prejudice as to all other grounds. (ECF No. 79.) This Court also stayed the matter to permit Hill to return to state court to exhaust his claims. (*Id*.)

Hill filed his final state habeas petition on September 25, 2001, arguing, in part, that he was "mentally retarded" and that his death sentence must be vacated. (ECF No. 146-1.) The state court found that Hill "presented evidence that he is mentally retarded" and that "the execution of a mentally retarded offender violates the cruel and unusual punishment prohibition of the Eighth Amendment" under *Atkins v. Virginia*. (ECF No. 146-17.) On October 12, 2002, the state court vacated Hill's death sentencing and left his remaining claims to "be resolved following the disposition of the state's motion to dismiss." (*Id*.) Fourteen years later, on January 17, 2017, the State moved to place the matter on calendar for purposes of resolving Hill's remaining claims. (ECF No. 146-18.) After supplemental briefs were filed by both parties, the state court dismissed the petition as untimely and successive. (ECF No. 146-27.) Hill appealed, and on October 23, 2019, the Nevada Supreme Court affirmed. (ECF No. 146-57.) Remittitur issued November 18, 2019. (ECF No. 146-58.) On December 29, 2021, the state court entered an amended judgment of conviction amending Hill's sentence on the first-degree murder conviction to 10 years to life plus a consecutive term of 10 years to life. (ECF No. 146-64.)

On November 10, 2021, this Court lifted the stay and reopened this matter. (ECF No. 129.) Hill filed his second-amended petition on July 11, 2022. (ECF No. 135.) In his second-amended petition, Hill raises the following grounds:

| | |
|---|---|
| 1(a). | His trial counsel failed to prepare for his guilt phase and investigate his innocence. |
| 1(b). | His trial counsel unreasonably conceded his guilt for felony murder. |
| 1(c). | His trial counsel failed to adequately explore his incompetence and cognitive impairments. |
| 1(d). | His trial counsel failed to investigate, interview, and present witnesses who could have aided in his defense. |
| 1(e). | His trial counsel failed to fully examine the physical evidence. |
| 2. | His trial counsel acted under several conflicts of interest. |
| 3. | His appellate counsel was ineffective. |
| 4. | The jury were given an improper instruction on guilt or innocence. |
| 5. | He was denied an impartial jury due to the State's racially motivated use of peremptory challenges. |
| 6. | The trial court erred in failing to allow individualized voir dire. |
| 7. | The jury did not include a fair cross-section of the community. |
| 8. | The trial court improperly refused to remove biased jurors from the jury panel. |
| 9. | The trial court improperly instructed the jury on the elements of first-degree murder. |
| 10. | The State improperly failed to disclose *Brady* evidence. |
| 11. | The State engaged in prosecutorial misconduct. |
| 12. | He was improperly absent from critical stages of post-conviction proceedings. |
| 13. | The Nevada Supreme Court failed to conduct a fair and adequate appellate review. |
| 14. | He did not receive fair and adequate appellate review because Nevada's judges are popularly elected. |
| 15. | The trial court failed to record bench conferences. |
| 16. | His conviction is unconstitutional because of cumulative error. |
| 17. | He is actually innocent of first-degree murder. |

Additionally, within each ground, Hill argues that his trial and/or appellate counsel were ineffective to the extent they failed to address the substantive issues within each ground.

Respondents moved to dismiss the second-amended petition on September 29, 2022. (ECF No. 150.) Hill responded, and Respondents replied. (ECF Nos. 154, 163.) Hill moved for an evidentiary hearing on January 12, 2023. (ECF No. 156.) Respondents responded, and Hill replied. (ECF Nos. 164, 167.)

## II.     LEGAL STANDARDS

### A.     Cognizable federal claims

The Antiterrorism and Effective Death Penalty Act ("AEDPA") "places limitations on a federal court's power to grant a state prisoner's federal habeas petition." *Hurles v. Ryan*, 752 F.3d 768, 777 (9th Cir. 2014) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). When conducting habeas review, a federal court is limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Unless an issue of federal constitutional or statutory law is implicated by the facts presented, the claim is not cognizable in federal habeas. *McGuire*, 502 U.S. at 68.

Federal habeas relief is unavailable "for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). A petitioner may not transform a state-law issue into a federal one merely by asserting a violation of due process. *Langford v. Day*, 110 F.3d 1380, 1381 (9th Cir. 1996). Alleged errors in the interpretation or application of state law do not warrant habeas relief. *Hubbart v. Knapp*, 379 F.3d 773, 779–80 (9th Cir. 2004). A petitioner "cannot, merely by injecting a federal question into an action that asserts it is plainly a state law claim, transform the action into one arising under federal law." *Caterpillar v. Williams*, 482 U.S. 386, 399 (1987); *accord Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (holding that federal habeas courts lack jurisdiction "to review state court applications of state procedural rules").

### B.     Exhaustion

A state prisoner first must exhaust state court remedies on a habeas claim before presenting that claim to the federal courts. 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement ensures that the state courts, as a matter of comity, will have the first opportunity to address and correct alleged violations of federal constitutional guarantees. *Coleman v. Thompson*, 501 U.S. 722, 730–

31 (1991). "A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999) ("Section 2254(c) requires only that state prisoners give state courts a *fair* opportunity to act on their claims.")).

A petitioner must present the substance of his claim to the state courts, and the claim presented to the state courts must be the substantial equivalent of the claim presented to the federal court. *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state courts have been afforded a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis. *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999); *see also Scott v. Schriro*, 567 F.3d 573, 582–83 (9th Cir. 2009) ("Full and fair presentation additionally requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief."). A petitioner may reformulate his claims so long as the substance of his argument remains the same. *Picard*, 404 U.S. at 277–78.

### C.   Procedural default

Federal courts are barred from considering a state prisoner's habeas claim if the state courts denied his claim pursuant to an independent and adequate state procedural rule. *Edwards v. Carpenter*, 529 U.S. 446, 454–55 (2000). "The Ninth Circuit has elaborated that a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Collier v. Bayer*, 408 F.3d 1279, 1284 (9th Cir. 2005) (internal quotation marks omitted). "If a state procedural rule is not well-established before a petitioner supposedly breaks the rule, then the rule cannot prevent federal review of the petitioner's federal claims." *Id.*

When a prisoner "procedurally defaults" a federal claim, judicial review is barred unless he can show either: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To demonstrate cause, a petitioner must show that some external and objective factor impeded his efforts to comply with the state's procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280–81 (2012). Ignorance or inadvertence does not constitute cause. *Murray v. Carrier*, 477 U.S. 478, 486–87 (1986). To show prejudice, a petitioner bears the burden of showing not merely that the error created a possibility of prejudice, but that the error worked to his actual and substantial disadvantage, infecting the entire proceeding with constitutional error. *Id*. at 494; *Bradford v. Davis*, 923 F.3d 599, 613 (9th Cir. 2019).

## III.   DISCUSSION

Respondents argue that grounds 12, 13, and 17 are non-cognizable.[1] (ECF No. 150.) Respondents next argue that grounds 1(a), 1(d), 1(e), 3, 12, 15, and 16 are unexhausted. (ECF No. 150.) Relatedly, Respondents argue that Hill's inclusion in every ground that his trial and/or appellate counsel erred renders every ground unexhausted. (*Id*.) Finally, Respondents argue that every ground in Hill's second-amended petition is procedurally barred because every claim was raised in his appeal of his final state habeas petition which was dismissed by the Nevada Supreme Court under independent and adequate state procedural rules, namely, as untimely, successive, and an abuse of the writ. (*Id*.)

---

[1]Respondents also argue that Hill's inclusion of his post-conviction counsel's ineffectiveness within his other grounds renders those portions of those other grounds non-cognizable. (ECF No. 150). Hill explains that the allegations of ineffective assistance of post-conviction counsel were raised only as a means of demonstrating cause and prejudice to overcome any procedural default. (*Id*. at 19–20.) The Court accepts Hill's explanation that his allegations regarding the ineffective assistance of his post-conviction counsel are not standalone claims, so this Court will not discuss whether these allegations are cognizable.

### A.      Cognizable claims

#### 1.      Ground 12

In ground 12, Hill alleges that he was improperly absent from many proceedings during the post-conviction process. (ECF No. 135 at 84.) Respondents contend that this ground is not cognizable because it alleges errors only in the post-conviction review process. (ECF No. 150 at 13.) A federal habeas petition must be directed to the question of whether the petitioner's detention violates federal law, so alleged errors in the manner in which state post-conviction proceedings are conducted are not cognizable on federal habeas review. *See, e.g., Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989) ("[A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings."). While alleged errors in the state post-conviction proceedings perhaps may have a bearing on other issues in the case, they do not present independently cognizable claims in federal habeas cases. Ground 12 is dismissed as non-cognizable.

#### 2.      Ground 13

In ground 13, Hill alleges that the Nevada Supreme Court failed to conduct a fair and adequate appellate review during his post-conviction appeal because (1) Justice A. William Maupin, who previously represented Leroy, participated in the appeal and (2) the Nevada Supreme Court engaged in improper speculation about the facts. (ECF No. 135 at 88–93.) Respondents argue that this ground is not cognizable because this Court does not review how the Nevada Supreme Court reviewed Hill's claims. (ECF No. 150 at 13 (citing *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("We are not a state supreme court of errors.")).) While alleged errors in the Nevada Supreme Court's review process may have a bearing on other issues in the

case, they do not present independently cognizable claims in federal habeas cases. Ground 13 is dismissed as non-cognizable.

### 3.    Ground 17

In ground 17, Hill alleges that he is actually innocent of first-degree murder. (ECF No. 135 at 107.) Respondents argue that neither the United States Supreme Court nor the Ninth Circuit Court of Appeals have determined whether a freestanding claim of actual innocence is cognizable on federal habeas review, so ground 17 should be dismissed as non-cognizable. (ECF No. 150 at 13–14.) The Supreme Court has not yet recognized a freestanding "actual innocence" claim as a constitutional claim. *See, e.g., McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Herrera v. Collins*, 506 U.S. 390, 417 (1993) (assuming, without deciding, that the execution of an innocent defendant would be unconstitutional); *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) ("We have not resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context, although we have assumed that such a claim is viable."). However, because this is an open question, this Court will not dispose of ground 17 as being non-cognizable.

### B.    Exhaustion

### 1.    Grounds 1(a), 1(d), 1(e)

In ground 1, Hill alleges that his trial counsel failed to investigate and challenge the State's guilt-phase case. (ECF No. 135 at 15.) Specifically, in ground 1(a), Hill alleges that his trial counsel failed to prepare for his trial and investigate his innocence, including investigating the following witnesses: Mary Golden, Chester Smith, and Clarence Cross. (*Id.* at 16–23.) In ground 1(d), Hill alleges that his trial counsel failed to investigate, interview, and present at trial the

following witnesses who could have aided in his defense: Shirley Baker, Calvin Walker, Tanzie Austin, Cosby Ann Bailey Ford, Virginia Denson, John Henry Bolton, Essie Walker, Sidney Wildridge, Calvin Walker, James Edward Price, and James Ray Taylor. (*Id*. at 29–34.) And in ground 1(e), Hill alleges that his trial counsel failed to fully examine the physical evidence, namely the inconsistencies between the physical crime scene and the testimony provided by Leroy. (*Id*. at 34.)

Regarding ground 1(a), Respondents argue that in his state habeas petition, Hill referenced all three individuals—Golden, Smith, and Cross—but in his state habeas appeal he only referenced Golden. (ECF No. 150 at 7 (citing ECF No. 146-49 at 29–30).) Hill rebuts that ground 1(a) is exhausted because "[t]he relevant declarations and petition, containing allegations and references on specific individuals, was filed with the Nevada Supreme Court as part of the record on appeal." (ECF No. 154 at 15 (citing *Gallegos v. Ryan*, 820 F.3d 1013, 1026 n.15 (9th Cir. 2016) ("Gallegos presented these claims in his supplemental petition for post-conviction relief. A copy of that petition was included in an appendix to his petition for review to the Arizona Supreme Court, which is sufficient to present the issue[s] in a full and fair manner to the state courts." (Internal quotation marks omitted)); *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009) (holding a petition accomplished a "full and fair presentation of his claims" because they were "included [in] a copy of the amended petition for post-conviction relief," which was attached "in the appendix of his petition for review to the Arizona Supreme Court"); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005)).)

It is true, as Hill contends, that in his appendix for his state habeas appeal filed with the Nevada Supreme Court on June 8, 2018, he included his state petition for post-conviction relief. (*See* ECF No. 155-2 at 15.) However, this is insufficient for exhaustion purposes. *See Castillo v.*

1   *McFadden*, 399 F.3d 993, 1000 (9th Cir.2005) (exhaustion requires presentation of federal

2   constitutional issues before the highest available state court "within the four corners of his

3   appellate briefing"). Hill's reliance on *Gallegos*, *Schriro*, and *Insyxiengmay* is unavailing because

4   the exhaustion analysis in these cases was tied to the relevant state procedures governing post-

5   conviction review. *See Gallegos*, 820 F.3d at 1026 n.15; *Schriro*, 567 F.3d at 582 n.8;

6   *Insyxiengmay*, 403 F.3d at 668-69. Accordingly, *Castillo* controls the Court's analysis here.

7   Because only Golden and Cross were mentioned within the four corners of Hill's opening brief to

8   the Nevada Supreme Court (*see* ECF No. 146-49 at 29–30), ground 1(a) is unexhausted to the

9   extent it incorporates Smith.

10          Regarding ground 1(d), Respondents argue that Hill included Ford as a possible mitigating

11   witness in his state habeas petition, but he did not include her in his claim regarding witnesses for

12   the guilt phase of the trial. (ECF No. 150 at 8.) Respondents argue that Hill only mentioned Baker,

13   Vivian Bailey, and Price in his appeal to the Nevada Supreme Court. (*Id.* (citing ECF No. 146-49

14   at 60–62).) Hill rebuts that the inclusion of Ford does not fundamentally alter the claim presented

15   to the state courts and that the other witnesses—besides Baker, Bailey, and Price—were referenced

16   in his state habeas petition, which, along with the declarations of these witnesses, were included

17   in his appendix to his state habeas appeal to the Nevada Supreme Court. (ECF No. 154 at 15–16

18   (citing ECF No. 146-1 at 33–37).) However, as this Court discussed with ground 1(a), ground 1(d)

19   is only exhausted to the extent it included the witnesses mentioned within the four corners of Hill's

20   opening brief to the Nevada Supreme Court. Because only Baker and Price were mentioned (*see*

21   ECF No. 146-49 at 60–61), ground 1(d) is unexhausted to the extent it incorporates witnesses other

22   than Baker and Price.

23

Regarding ground 1(e), Respondents argue that while Hill referenced this claim in his state habeas petition, he did not include it in his appeal to the Nevada Supreme Court. (ECF No. 150 at 8.) Hill rebuts again that this claim was included in his state habeas petition, which was included in his appendix to his state habeas appeal to the Nevada Supreme Court. (ECF No. 154 at 16.) However, because ground 1(e) was not discussed within the four corners of Hill's opening brief to the Nevada Supreme Court, it is unexhausted.

## 2. Ground 3

In ground 3, Hill alleges that his appellate counsel failed to raise the following grounds contained in his second-amended federal petition before the state courts: grounds 2 and 4-16. (ECF No. 135 at 44–45.) Respondents argue that to the extent Hill seeks to incorporate unexhausted claims into ground 3, it is unexhausted. (ECF No. 163 at 6.) However, because the Court does not find that the substantive claims made in grounds 2 or 4-16 are unexhausted, the Court finds that ground 3 is exhausted.

## 3. Ground 12[2]

In ground 12, Hill alleges that he was improperly absent from critical stages of proceedings. (ECF No. 135 at 84.) Respondents argue that in his state habeas petition, Hill only referred to improper absences for post-conviction proceedings and failed to mention hearings related to scheduling his execution or issuance of the supplemental execution order or warrant. (ECF No. 150 at 9.) In his post-conviction appeal to the Nevada Supreme Court, Hill alleged his "right to be present during critical stages of the proceedings" was violated. (ECF No. 146-49 at 86.) Specifically, Hill alleges that he was absent from the 1989 post-conviction evidentiary hearing, the

---

[2]Although ground 12 has already been dismissed as non-cognizable, the Court discusses it here out of an abundance of caution.

oral argument on his post-conviction petition, and "other post-conviction hearings." (*Id.*) Although Hill did not mention hearings regarding his execution specifically, his "other post-conviction hearings" language appears to incorporate those hearings as well. Ground 12 is exhausted.

### 4.   Ground 15

In ground 15, Hill alleges that the unrecorded bench conferences violated his constitutional rights. (ECF No. 135 at 99.) Respondents argue that in his state habeas appeal, Hill only referenced unrecorded bench conferences within his cumulative error claim and provided no factual allegations to support this ground. (ECF No. 150 at 9.) Respondents are correct that Hill's only reference to unrecorded bench conferences is in his cumulative error claim before the Nevada Supreme Court on his state habeas appeal. (*See* ECF No. 146-49 at 90.) However, because the factual allegations of this claim are contained within the description of the claim itself—unrecorded bench conferences—the Court finds that this claim was fairly presented to the state courts. Ground 15 is exhausted.

### 5.   Ground 16

In ground 16, Hill alleges that his conviction is unconstitutional because of cumulative error. (ECF No. 135 at 103.) Respondents argue that Hill failed to include all the legal and factual allegations contained in his instant cumulative error claim in his state habeas petition. (ECF No. 150 at 9.) "Cumulative error must distinctly be raised as an issue at the state level for purposes of exhaustion before seeking federal habeas review." *Pinnell v. Belleque*, 638 F. Supp. 2d 1231, 1244 (D. Or. 2009) (citing *Solis v. Garcia*, 219 F.3d 922, 930 (9th Cir. 2000)). Ground 16 is exhausted except to the extent that it incorporates ground 1(e), the portions of grounds 1(a) and 1(d) that this Court has found to be unexhausted *supra*, and the portions of grounds 4-17 that this Court finds to be unexhausted *infra*.

### 6.    Inclusion of trial and/or appellate counsel error

Respondents explain that in every ground of his second-amended petition, Hill includes paragraphs alleging ineffective assistance of his trial counsel ("IATC") and/or ineffective assistance of his appellate counsel ("IAAC") that he did not present in support of his state habeas appeal, apart from his appellate claims presented in ground 3. (ECF No. 150 at 9.) Hill rebuts that the addition of IATC and/or IAAC claims within the substantive grounds of his second-amended petition does not render those substantive grounds unexhausted because the IATC and IAAC claims are meant to be separate. (ECF No. 154 at 19.)

Hill includes allegations in grounds 4-17 regarding his trial and/or appellate counsel. (*See* ECF No. 135 at 48 (ground 4), 53–54 (ground 5), 61 (ground 6), 64–65 (ground 7), 69 (ground 8), 73 (ground 9), 77–78 (ground 10), 83 (ground 11), 87 (ground 12), 92–93 (ground 13), 98 (ground 14), 101–02 (ground 15), 105–06 (ground 16), 112 (ground 17).) In these grounds, regarding his trial counsel, Hill simply states, "[t]o the extent trial counsel failed to raise the proper objections or advance the arguments above, counsel's performance was deficient. There is a reasonable probably that but for counsel's deficient performance, the outcome of the proceeding would have been different." And in these grounds, regarding appellate counsel, Hill simply states, "[t]o the extent that Mr. Hill's direct appeal counsel failed to present all available pertinent facts and constitutional arguments to the Nevada Supreme Court, counsel was ineffective. There is a reasonable probability of a more favorable outcome on appeal if counsel had properly raised and effectively briefed this issue." The Court disapproves of the inclusion of these identical generic statements that have been tacked on to grounds 4-17. However, this Court accepts Hill's explanation that the IATC and IAAC portions of these grounds are meant to be independent claims.

1    As such, the Court finds that grounds 4-17 are unexhausted, in part, to the extent they include these

2    IATC and IAAC claims.

3           **7.**       **Anticipatory default**

4        Respondents argue that this Court should apply the doctrine of anticipatory default to Hill's

5    unexhausted grounds. (ECF No. 150 at 10.) The Supreme Court has recognized that under certain

6    circumstances it may be appropriate for a federal court to anticipate the state-law procedural bar

7    of an unexhausted claim and to treat such a claim as subject to the procedural default doctrine. "An

8    unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the

9    petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir.

10   2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)). In light of the procedural history

11   of this case—namely, the Nevada Supreme Court's October 23, 2019, order dismissing Hill's last

12   state habeas action as procedurally barred and rejecting Hill's arguments for overcoming the

13   procedurally bars, including cause and prejudice and actual innocence arguments—it is plain that

14   Hill's unexhausted claims would be ruled procedurally barred in state court if he were to return to

15   state court to attempt to exhaust those claims. Therefore, the anticipatory default doctrine applies,

16   and the Court considers Hill's unexhausted claims to be technically exhausted, but subject to the

17   procedural default doctrine. *See Dickens*, 740 F.3d at 1317.

18       **C.**       **Procedural default**

19        As previously mentioned, the Nevada Supreme Court affirmed the denial, in part, of Hill's

20   state habeas petition, finding that it was untimely filed under Nev. Rev. Stat. 34.726(1), successive

21   under Nev. Rev. Stat. 34.810(1)(b)(2), and an abuse of the writ under Nev. Rev. Stat. 34.810(2).

22   (ECF No. 146-57.) Respondents contend that these bars are adequate and independent. (ECF No.

23   150 at 11.) Hill does not dispute that all his claims are procedurally defaulted. Rather, Hill argues

that (1) he can demonstrate cause and prejudice to overcome the procedural default of grounds 1, 2, and the IATC claims contained within grounds 4-12 and 14-17 under *Martinez v. Ryan*, (2) he can overcome the procedural default of grounds 1, 3, 10, 11, and 16 based on the State's *Brady* violations, and/or (3) he can overcome the procedural default of his entire second-amended petition based on the state court's failure to appoint counsel in his initial post-conviction proceedings and his actual innocence. (ECF No. 154 at 20, 31–36.) The Court will discuss each of these contentions in turn.

### 1.   *Martinez*

"Generally, post-conviction counsel's ineffectiveness does not qualify as cause to excuse a procedural default." *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019) (citing *Coleman v. Thompson*, 501 U.S. 722, 754-55 (1991)). However, in *Martinez*, the Supreme Court created a narrow exception to the general rule that errors of post-conviction counsel cannot provide cause for a procedural default. 566 U.S. at 16-17. "Under *Martinez*, the procedural default of a substantial claim of ineffective assistance of trial counsel is excused, if state law requires that all claims be brought in the initial collateral review proceeding . . . and if in that proceeding there was no counsel or counsel was ineffective." *Id*. (citing *Martinez*, 566 U.S. at 17). But *Martinez* cannot excuse the procedural default of a substantive claim of trial-court error, appellate-level IAC claims, or "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." 566 U.S. at 16-7; *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). To establish cause and prejudice to excuse the procedural default of a trial-level IAC claim under *Martinez*, a petitioner must show that: (1) post-conviction counsel performed deficiently; (2) there was a reasonable probability that, absent the deficient performance, the result of the post-

conviction proceedings would have been different, and (3) the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. *Ramirez*, 937 F.3d at 1242 (internal quotation omitted).

Respondents argue that *Martinez* does not apply in this matter. (ECF No. 163 at 11.) Respondents explain that *Martinez* only extends to attorney errors during initial-review collateral proceedings, and here Hill was not appointed counsel during his initial-review collateral proceeding, namely regarding his original *pro se* state habeas petition filed on September 25, 1986. (*Id*. at 11–12.) And even though Hill was appointed counsel during his subsequent collateral proceeding, which was treated as the equivalent of an initial collateral proceeding by the state courts, Respondents argue that *Martinez* does not distinguish between claims raised in a first state habeas petition and the equivalent of a first petition. (*Id*. at 12.)

Under Respondents' logic—*i.e.*, that Hill's initial-review collateral proceeding encompasses only his *pro se* state habeas petition filed on September 25, 1986, and not his later quasi-initial-review proceeding in which counsel was appointed—which this Court accepts for purposes of finding cause in this matter, Hill demonstrates cause under *Martinez* because he had no counsel during his initial-review collateral proceeding. Thus, this Court finds that Hill has arguably met three of the elements under *Martinez*: (1) he had no counsel during his initial-review collateral proceeding, (2) his state post-conviction petition was the initial proceeding regarding claims of ineffective assistance of trial counsel, and (3) Nevada law requires that a claim of ineffective of assistance of trial counsel be raised in a post-conviction habeas corpus proceeding. (ECF No. 57 at 3.) However, because the analysis of prejudice under *Martinez* to overcome the procedural default of grounds 1, 2, and the IATC claims contained within grounds 4-12 and 14-17 is necessarily intertwined with the merits of grounds 1, 2, and the IATC claims contained within

1  grounds 4-12 and 14-17, the Court defers a determination of the fourth element of *Martinez*:

2  whether the claims of ineffective assistance of trial counsel are substantial.

3                    **2.    *Brady***

4          "Cause and prejudice necessary to overcome the default of a *Brady* claim parallel the

5  second and third elements of a *Brady* violation." *Martinez v. Ryan*, 926 F.3d 1215, 1227 (9th Cir.

6  2019) (citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004)); *Brady v. Maryland*, 373 U.S. 83

7  (1963). Those elements are "that evidence must have been suppressed by the State, either willfully

8  or inadvertently" and "prejudice must have ensued." *Martinez*, 926 F.3d at 1227 (quoting *Strickler*

9  *v. Greene*, 527 U.S. 263, 282 (1999)). "Thus, a petitioner establishes cause when the reason for

10 his failure to bring a timely *Brady* claim is the government's suppression of the relevant evidence,

11 and establishes prejudice when the suppressed evidence is material for *Brady*

12 purposes." *Id*. "Evidence is material 'when there is a reasonable probability that, had the evidence

13 been disclosed, the result of the proceeding would have been different.'" *Id*. (quoting *Cone v. Bell*,

14 556 U.S. 449, 470 (2009)).

15         Hill alleges that the prosecution withheld material exculpatory evidence relating to his own

16 illiteracy and relating to Leroy's credibility. Specifically, regarding the former allegation, Hill

17 alleges that the State failed to disclose a Las Vegas Metropolitan Police Department Detention

18 Bureau Personal Information form that noted that Hill "cannot read or write." (ECF No. 154 at

19 32.) And regarding the latter allegation, Hill alleges that the prosecution failed to disclose that

20 Leroy suffered from alcoholism. (*Id*.)[3]

21

22

---

23 [3]Notably, the Nevada Supreme Court rejected Hill's cause and prejudice arguments under *Brady* because "Hill concede[d] that he discovered the evidence supporting the alleged *Brady* violation over one year before he filed the instant petition." (ECF No. 146-57 at 4.)

Because the former evidence, namely evidence of Hill's own illiteracy, was known by Hill at the time of his trial, Hill fails to demonstrate suppression and cause to excuse the procedural default of this first portion of ground 10. And because the latter evidence, namely Leroy's alcoholism, was not material, Hill fails to demonstrate prejudice to excuse the procedural default of this second portion of ground 10. Indeed, regarding materiality, this Court finds that there is not a reasonable probability that, had Leroy's alcoholism been disclosed, that the result of Hill's trial would have been different. It is true that Leroy was a key witness for the prosecution because he testified about which perpetrator committed which acts during the invasion (*see* ECF No. 142-43 at 20–37), so his unreliability would have been favorable evidence for the defense in blaming Marshall. However, because Hill does not allege that Leroy was under the influence of alcohol at the time of the attacks or at the time of trial, the Court finds that Hill fails to demonstrate that Leroy's general suffering from alcoholism affected the reliability of his testimony. Moreover, because Hill admitted to being unlawfully present at the Matthews' home during the attacks, albeit denying he committed the sexual assault on Altonia, Hill was still criminally liable under an aiding and abetting theory of liability and under the felony murder rule even if Leroy's testimony was proven to be not entirely reliable.

In sum, Hill fails to demonstrate cause and prejudice under *Brady* to excuse the procedural default of grounds 1, 3, 10, 11, and 16.

### 3.    Lack of appointed counsel

Hill argues he can overcome the procedural default of his entire second-amended petition based on the state court's failure to appoint him counsel in 1986 when his original *pro se* post-conviction petition was filed because appointment of counsel was mandatory under Nevada law at that time. (ECF No. 154 at 33.) In 1986, Nev. Rev. Stat. § 177.345(1) provided that "if the

petitioner was indigent, he was *entitled* to counsel, and the court was required to appoint him representation." *Crump v. Warden, Nevada State Prison*, 934 P.2d 247, 249 n.2 (Nev. 1997) (emphasis in original) (explaining that "[t]his statute was amended in 1987 to allow for discretionary appointment of counsel if the petitioner was indigent" and repealed in 1993). Although the state court's apparent failure to comply with Nev. Rev. Stat. § 177.345(1) in 1986 certainly amounts to an external and objective factor under this Court's cause calculation, this Court finds that this failure did not impede Hill's efforts to comply with the state's procedural rules. Indeed, the Nevada Supreme Court specifically held that Hill would be able "to re-file his petition for post-conviction relief in the district court" and instructed the state court to appoint Hill counsel on his renewed petition and hold an evidentiary hearing. (ECF No. 144-53 at 3.) As such, because (1) Hill was able to renew his petition, (2) Hill faced no procedural detriment regarding his renewed petition, and (3) the state court treated his renewed petition as the equivalent of a first state habeas petition, Hill fails to demonstrate cause to overcome the procedural default of his entire second-amended petition based on the state court's failure to appoint him counsel in 1986.

### 4. Actual innocence

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this regard, "actual innocence" means actual factual innocence, not mere legal insufficiency. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). However, "where post-conviction evidence casts doubt on the conviction by undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence, that can be enough to pass through the *Schlup* gateway to allow consideration of otherwise barred claims." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation omitted). Nevertheless,

the Supreme Court has emphasized that "tenable actual innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

"To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with *new reliable evidence*—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324 (emphasis added). To be "new" for purposes of an actual innocence claim, the evidence need only be "newly presented," *i.e.*, reliable evidence "that was not presented at trial," as opposed to "newly discovered" and thus previously unavailable. *Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003). Actual innocence review incorporates "all evidence," including (1) evidence alleged to have been improperly admitted (but with due regard to its questionable reliability), (2) evidence tenably claimed to have been wrongfully excluded by the trial court, (3) evidence the defense did not present to the jury at trial, or (5) evidence that became available only after the trial. *Id*. (citing *Schlup*, 513 U.S. at 327-28).

Newly presented evidence may call into question the credibility of trial witnesses, potentially requiring credibility assessments on federal habeas review. *See Schlup*, 513 U.S. at 330; *Stewart v. Cate*, 757 F.3d 929, 941 (9th Cir. 2014). However, a *Schlup* claim attempting to discredit prosecution witnesses provides less support for actual innocence than affirmatively presenting new exculpatory evidence. *See, e.g., Lee*, 653 F.3d at 94345 (holding that a reasonable juror may have rejected an expert's speculation and, even assuming a police report constituted new evidence, jurors may still have convicted the petitioner given all they heard at trial); *Sistrunk v.*

1   *Armenakis*, 292 F.3d 669, 675-76 (9th Cir. 2002) (en banc) (finding that excluded evidence had

2   "some impeachment value" but was "far from conclusive," and thus did not undermine confidence

3   in the conviction).

4        Hill argues that no reasonable juror would have convicted him in light of the following: (1)

5   new evidence that his intellectual disability prevented him from waiving counsel and rendered his

6   confession unreliable, (2) new evidence that his intellectual disability prevented him from

7   understanding or resisting when Marshall insisted that they rob the victims, (3) new evidence that

8   Leroy knew Marshall better than he let on prior to the attacks and purchased a life insurance policy

9   for Altonia before the murder, and (4) new evidence rendering unreliable Lavone Kelly's trial

10  testimony that she saw Hill adjusting his pants upon leaving the Matthews' apartment. (ECF No.

11  154 at 48.)[4] This Court cannot find that it is more likely than not that no reasonable juror would

12  have convicted Hill in light of this allegedly new evidence.

13       Regarding Hill's first and second contentions regarding his intellectual disability, Hill

14  provides, at most, evidence that he could have presented in defense of the charges.[5] He does not

15  provide evidence that he did not commit the crimes or that he was not guilty of the crimes. Indeed,

16  Hill's arguments in support of his actual innocence lack certainty: Hill states that the new evidence

17

---

18  [4]Notably, the Nevada Supreme Court rejected Hill's cause and prejudice arguments under *Schlup*
    because (1) Hill's cognitive impairment evidence is not new because it "was known at the time of
19  trial and presented as mitigating evidence during the penalty hearing," (2) "the evidence of his
    intellectual disability and new declarations undercutting witness testimony at trial does not make
20  it more likely than not that no reasonable juror would have convicted him, given the other evidence
    of guilt," (3) "[t]he evidence that Leroy knew Marshall before the burglary is not new," (4) "is it
21  not likely that any reasonable juror would have a reasonable doubt about Hill's culpability as to
    the charge of felony murder in the first degree based on new evidence that Leroy mistreated Altonia
22  and purchased life insurance," and (5) "whether Hill was adjusting his pants when he left the
    Matthews' apartment . . . is of little import." (ECF No. 146-57 at 5–6.)

23  [5]Notably, a diminished capacity defense is not available in Nevada. *See Crawford v. State*, 121
    P.3d 582, 591 (Nev. 2005).

1    "that individuals with [an intellectual disability] are susceptible to giving false confessions . . .

2    *increases the likelihood* [his] confession was unreliable" and "his [intellectual disability]

3    *undermined* the State's argument that he" had the intent to commit a felony. (ECF No. 154 at 49–

4    50 (emphases added).)

5          Turning to Hill's third contention regarding Leroy, evidence that Leroy knew Marshall

6    better than he let on and evidence that Leroy purchased a life insurance policy on Altonia before

7    the attacks certainly casts doubt on Leroy's culpability and reliability, but it does not undercut the

8    reliability of the proof of guilt regarding Hill. Regardless of Leroy's culpability and testimony,

9    given the evidence presented at trial, especially Hill's confession, Hill fails to demonstrate that no

10   juror would have voted to find him guilty beyond a reasonable doubt.

11         And finally, regarding Hill's contention that Kelly's testimony was unreliable regarding

12   her seeing Hill adjust his pants following the attacks, Hill again fails to demonstrate that no juror

13   would have voted to find him guilty beyond a reasonable doubt. Indeed, this piece of Kelly's

14   testimony lacks sufficient significance.

15         In sum, Hill fails to demonstrate actual innocence to excuse the procedural default of his

16   second-amended petition.

17         **D.    Consideration of new exhibits**

18         Respondents argue that this Court cannot consider new exhibits presented for the first time

19   in support of these federal proceedings. (ECF No. 150 at 11.) Respondents request that this Court

20   strike Hill's exhibits, except for the ones that were properly included in the state court record,

21   because Hill has not demonstrated that he meets the requirements of Habeas Rule 7 or § 2254(e)(2).

22   (*Id.* at 13.) Hill responds that all exhibits filed with his second-amended petition were previously

23   filed with the state court and this Court, except exhibits 282, 283, 284, and 285, which are

newspaper articles regarding jury selection in Nevada and the Jury Improvement Commission's Report. (ECF No. 154 at 60.) Because this Court did not consider exhibits 282, 283, 284, and 285 in its consideration of Respondents' motion to dismiss, it declines to strike any exhibits. This Court will, however, entertain any argument regarding whether an exhibit should be considered during its merits review of Hill's second-amended petition.

## IV.   EVIDENTIARY HEARING

In his motion for evidentiary hearing, Hill requests an evidentiary hearing—to the extent that Respondents dispute any of the facts in his opposition to the motion to dismiss—to prove his allegations of good cause and prejudice under *Martinez*, based on the State's suppression of evidence under *Brady*, and his actual innocence under *Schlup*. (ECF No. 156 at 6–7.) Because (1) Respondents largely do not dispute the factual issues in the case and (2) this Court is able to decide Respondents' motion to dismiss on the pleadings, this Court declines to hold an evidentiary hearing at this time.

## V.   CONCLUSION

IT IS THEREFORE ORDERED that Respondents' motion to dismiss **[ECF No. 150] is granted, in part**, as follows: (1) grounds 1, 2, and the IATC claims contained within grounds 4-12 and 14-17 are procedurally defaulted, and the Court defers consideration of whether Hill can demonstrate cause and prejudice under *Martinez v. Ryan* to overcome the procedural default of these grounds until after the filing of an answer and reply in this action, (2) the substantive claims and IAAC claims in grounds 3-11 and 14-17 are dismissed as procedurally defaulted, and (3) the substantive claims and IAAC claims in grounds 12-13 are dismissed as procedurally defaulted and/or non-cognizable.

1   **IT IS FURTHER ORDERED** that Hill's motion for evidentiary hearing **[ECF No. 156]**

2   is **DENIED**.

3   **IT IS FURTHER ORDERED** that, pursuant to this Court's scheduling order [ECF No.

4   129], Respondents have 90 days from the date of this order in which to file an answer to the

5   remaining grounds in the second-amended petition. Hill will then have 60 days following the filing

6   of an answer to file a reply. Respondents will thereafter have 30 days following the filing of a reply

7   to file a response to the reply.

8   DATED: August 7, 2023

9   _____

    KENT J. DAWSON
10  UNITED STATES DISTRICT COURT

11

12

13

14

15

16

17

18

19

20

21

22

23