**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JAMES EARL HILL,<br><br>                              Petitioner,<br><br>v.<br><br>CALVIN JOHNSON, et al.,<br><br>                              Respondents. | Case No. 2:98-cv-00914-KJD-DJA<br><br>**ORDER** |

Petitioner James Earl Hill, a Nevada prisoner, has filed a counseled second-amended petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 135.) Currently before the Court is Hill's motion for evidentiary hearing and motion to file an additional responsive pleading. (ECF Nos. 189, 207.) Respondents have opposed both motions. (ECF Nos. 203, 208.) Hill has replied to both oppositions. (ECF Nos. 206, 209.) For the reasons discussed below, the Court denies the motion for evidentiary hearing without prejudice and grants the motion to file an additional responsive pleading.

**I.      FACTUAL AND PROCEDURAL HISTORY**

In its order affirming the denial of Hill's state habeas petition, the Nevada Supreme Court described the crime, as revealed by the evidence at Hill's trial, as follows:

> On March 8, 1983, at 11:00 p.m., Hill and [co-defendant Brian Keith] Marshall kicked in the front door to an apartment occupied by the Matthews. The couple was in bed, and Altonia had already fallen asleep. She was fifty-six years old and confined to a wheelchair due to paralysis on her left side resulting from a stroke.
>
> After hearing the crash of the front door, Leroy ran to the bedroom doorway and saw two young men coming into the apartment toward the bedroom. Leroy slammed the bedroom door closed and pushed a dresser against it, attempting to barricade himself and his wife inside. When Leroy discovered that he could not keep the intruders out, he went to the bedroom window, removed a stick used to lock the window shut ("window stick"), and placed the window stick on the bed. He opened the window and put his head outside when he encountered Marshall,

who had come around the building to meet Leroy at the window. Marshall was carrying a sawed-off pool cue stick ("cue stick"); however, Leroy mistook it for a gun. Marshall threatened to "blow [Leroy's] head off" if he went out the window. Therefore, Leroy retreated back into his bedroom. Marshall apparently went back inside to assist Hill in pushing the bedroom door open and overpowering Leroy's barricade.

Once Hill and Marshall were inside the bedroom, Altonia awoke to the commotion. She asked what was happening, and Hill hit her hard on her forehead with his fist, exclaiming, "Shut up, Bitch!" At this time, Marshall demanded the television, jewelry, and money. Leroy responded that he and his wife did not have any of those items.

Marshall then coaxed Leroy out of the bedroom and into the living room. Once Leroy followed Marshall, he realized the item in Marshall's hand was not a gun as he had thought; rather, it was the cue stick. Therefore, Leroy attempted to grab the cue stick from Marshall, and the two struggled and fought over the cue stick until they eventually reached the kitchen, located near the front door. Leroy would not let go of the cue stick, and Marshall hit him with a fist. Leroy then tripped and fell on the floor. Marshall climbed on top of Leroy and started choking him with the cue stick across his neck. Leroy later testified that Marshall never left his presence throughout the entire ordeal. He further testified that he was positive Marshall was the man with whom he struggled, not Hill. This is supported by the fact that Leroy recognized Marshall and Hill from the neighborhood prior to March 8, 1983. Also, at trial, other testimony was presented that Hill and Marshall looked nothing alike and could not easily be mistaken for each other. Hill has a much darker complexion than Marshall and is about five or six inches shorter than Marshall.

In the meantime, Hill was left in the bedroom with Altonia. Leroy heard his wife screaming in great pain and yelling, "Why are you doing that to me? Don't do that to me!" Later it was discovered that Hill had beat her up and sexually assaulted her by deeply and repeatedly thrusting a stick, presumably the window stick, inside her anal opening with great force. Eventually, Marshall yelled to Hill to leave the premises. Before leaving, Marshall threatened Leroy that if he told the police, he was as good as dead. Marshall and Hill then left the apartment.

Leroy went into the bedroom to discover his wife beaten up and bloody, lying on the floor. He also saw the window stick lying on the bed. Leroy placed the window stick back in the window. Leroy put Altonia in her wheelchair and moved her into the living room where he carried her to the couch. He got cold towels and attempted to attend to her wounds. Leroy then moved Altonia to the floor because she was in such pain; thereafter, she again requested to be placed on the couch. Leroy testified that he did not realize how injured she was until she told him that she thought she was dying. Because the couple did not own a phone, Leroy was forced to leave his injured wife and run several blocks to his sister-in-law's house to call an ambulance. Additionally, because Marshall lived nearby and Leroy feared another confrontation, Leroy had to proceed a few blocks out of his way to get to the phone.

> [FN1] Inexplicably, there was a four-hour delay between the time Marshall and Hill left the Matthews' apartment at about 11:30 p.m. and the time when the ambulance was called at 3:30 a.m. Leroy testified that he delayed only about fifteen to twenty minutes after the two men left. Given the duress he was under, Leroy likely delayed longer than he thought he had, attempting to comfort his wife. Additionally, running to his sister-in-law's house may have taken more time than he realized.

Afterward, the ambulance and the police arrived at the Matthews' residence, and Altonia was transported to the hospital.

On March 10, 1983, Altonia died from her injuries. Dr. James Clarke, the medical examiner, performed an autopsy. He later testified at trial that Altonia's external injuries included deep lacerations on her forehead penetrating all the way to the bone. She had severe bruising, including a black eye, and several broken teeth. Altonia additionally suffered from deep cuts to her perineum (the area between her vaginal and anal openings) so severe that there existed only one common opening. Dr. Clarke testified that this injury resulted from a sharp-ended stick, such as the window stick, being thrust inside her with great force at least four or five times.

Dr. Clarke further testified as to Altonia's internal injuries. Before she died, Altonia underwent surgery to repair her abdomen and remove her sigmoid colon (the part of the large intestine that connects the colon with the rectum) because they were perforated by the same object that tore her perineum. There was damage to her kidney and hemorrhaging in the kidney area. Dr. Clarke informed the jury that the object used to assault Altonia was thrust into her at least fourteen inches deep in order to reach the kidney from her anal opening.

Dr. Clarke testified that the cause of Altonia's death was peritonitis (inflammation of the abdominal surfaces) and atelectasis (combination of the injuries and shock causing the lungs to collapse) due to someone thrusting a long sharp object, likely the window stick, into her rectum.

On March 13, 1983, after police investigations led to Marshall and Hill as suspects, Marshall was arrested. He made two voluntary statements to the police, apparently blaming Hill for the sexual assault, while admitting his involvement in the other crimes committed on the Matthews. Later that day, Hill was also arrested, and he, too, made voluntary statements to the police admitting his involvement, but insisting that Marshall committed the sexual assault on Altonia.

(ECF No. 145-38 at 3–7.)

A jury found Hill guilty of burglary, attempted robbery with use of a deadly weapon, attempted robbery, battery with use of a deadly weapon, sexual assault with use of a deadly weapon, and first-degree murder with use of a deadly weapon. (ECF No. 143-11.) A three-judge

3

panel imposed a death sentence for the first-degree murder conviction. (ECF No. 143-34.) The court then sentenced Hill as follows for his other convictions: 10 years for burglary; 7.5 years with a consecutive sentence of 7.5 years for attempted robbery with the use of a deadly weapon; 7.5 years for attempt robbery; 10 years for battery with use of a deadly weapon; and life with a consecutive life sentence for sexual assault with the use of a deadly weapon. (ECF No. 143-49.) The judgment of conviction was entered on December 21, 1983. (*Id*.)

Hill appealed his judgment of conviction. (ECF No. 143-47.) The Nevada Supreme Court affirmed on September 4, 1986. (ECF No. 144-22.) Remittitur issued on September 23, 1986. (ECF No. 144-23.) The United States Supreme Court denied certiorari. (ECF No. 144-41.)

Hill filed a *pro se* state habeas petition on September 25, 1986. (ECF No. 144-24.) The state district court denied the petition. (ECF No. 144-30.) On June 29, 1987, the Nevada Supreme Court dismissed the appeal without prejudice as untimely, ordering the state district court to hold an evidentiary hearing and appoint counsel for Hill if Hill elected to refile his petition. (ECF No. 144-53.) Hill filed two more *pro se* state habeas petition on March 18, 1987, and July 27, 1987, respectively. (ECF Nos. 144-44, 144-55.) The state district court appointed counsel, and counsel filed a supplemental petition and points and authorities. (ECF Nos. 145-2, 145-3, 145-8.) Following an evidentiary hearing, the state district court denied Hill post-conviction relief. (ECF Nos. 145-10, 145-15.) Hill appealed, and the Nevada Supreme Court affirmed on February 26, 1998. (ECF No. 145-38.) The Nevada Supreme Court then denied Hill's petitions for rehearing. (ECF Nos. 145-41, 145-44.) The United States Supreme Court denied certiorari. (ECF No. 145-47.) Remittitur issued February 19, 1999. (ECF No. 145-49.)

Hill's *pro se* federal habeas petition was filed on June 16, 1998. (ECF No. 1 at 1.) This Court appointed counsel to represent Hill. (*Id*. at 2.) Hill filed his counseled first-amended federal

4

habeas petition on November 1, 1999. (*Id*. at 5.) Respondents moved to dismiss the first-amended petition on February 10, 2000. (*Id*. at 6.) On August 27, 2001, this Court granted Respondents' motion to dismiss, in part, regarding the lack of exhaustion but denied the motion without prejudice as to all other grounds. (ECF No. 79.) This Court also stayed the matter to permit Hill to return to state court to exhaust his claims. (*Id*.)

Hill filed a counseled state habeas petition on September 25, 2001, arguing, in part, that he is "mentally retarded" and that his death sentence must be vacated. (ECF No. 146-1.) The state district court found that Hill "presented evidence that he is mentally retarded" and that "the execution of a mentally retarded offender violates the cruel and unusual punishment prohibition of the Eighth Amendment" under *Atkins v. Virginia*. (ECF No. 146-17.) On October 12, 2002, the state court vacated Hill's death sentencing and left his remaining claims to "be resolved following the disposition of the state's motion to dismiss." (*Id*.) Fourteen years later, on January 17, 2017, the State moved to place the matter on calendar for purposes of resolving Hill's remaining claims. (ECF No. 146-18.) After supplemental briefs were filed by both parties, the state district court dismissed the petition as untimely and successive. (ECF No. 146-27.) Hill appealed, and on October 23, 2019, the Nevada Supreme Court affirmed. (ECF No. 146-57.) Remittitur issued on November 18, 2019. (ECF No. 146-58.) On December 29, 2021, the state district court entered an amended judgment of conviction amending Hill's sentence on the first-degree murder conviction to 10 years to life plus a consecutive term of 10 years to life. (ECF No. 146-64.)

On November 10, 2021, this Court lifted the stay and reopened this matter. (ECF No. 129.) Hill filed his second-amended petition on July 11, 2022. (ECF No. 135.) Respondents moved to dismiss the petition on September 29, 2022. (ECF No. 150.) Hill responded, and Respondents replied. (ECF Nos. 154, 163.) Hill moved for an evidentiary hearing on January 12, 2023. (ECF

No. 156.) Respondents responded, and Hill replied. (ECF Nos. 164, 167.) On August 7, 2023, this Court denied the motion for evidentiary hearing and granted the motion to dismiss, in part, finding that (1) grounds 1, 2, and the ineffective-assistance-of-trial-counsel ("IATC") claims contained within grounds 4-12 and 14-17 were procedurally defaulted, deferring consideration of whether Hill could demonstrate cause and prejudice under *Martinez v. Ryan* to overcome the procedural default of these grounds until after the filing of an answer and reply in this action, (2) the substantive claims and ineffective-assistance-of-appellate-counsel ("IAAC") claims in grounds 3-11 and 14-17 were procedurally defaulted, and (3) the substantive claims and IAAC claims in grounds 12-13 were procedurally defaulted and/or non-cognizable. (ECF No. 168.) On September 7, 2023, Hill moved for reconsideration of this Court's order on the motion to dismiss. (ECF No. 169.) Respondents opposed the motion, and Hill replied. (ECF Nos. 172, 174.) The Court denied the motion for reconsideration on January 31, 2024. (ECF No. 176.)

Respondents filed their answer to the second-amended petition on August 30, 2024. (ECF No. 183.) Hill filed his reply on February 27, 2025. (ECF No. 188.) Respondents filed their surreply on December 8, 2025. (ECF No. 202.)

## II.      DISCUSSION

### A.      Motion for Evidentiary Hearing

In his motion, Hill requests that the Court hold an evidentiary hearing "should [it] determine that the currently existing record is insufficient to warrant relief" on "whether he can overcome procedural default because of the ineffective assistance of initial postconviction counsel and whether he is entitled to relief on the merits of his claims." (ECF No. 189.)

U.S.C. § 2254(e)(2) provides as follows:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

    (A)    the claim relies on--

        (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

In *Shinn v. Ramirez*, the Supreme Court of the United States reinforced that when reviewing a federal habeas petition, the federal court may not consider any facts beyond the factual record presented to the state postconviction relief court, unless one of the exceptions of 28 U.S.C. § 2254(e)(2) applies. 596 U.S. 366, 382 (2022). The *Ramirez* Court also held that, with respect to procedurally defaulted claims not adjudicated on their merits in state court, the federal habeas court may not hold an evidentiary hearing or otherwise consider new evidence, either regarding the question of cause and prejudice relative to a procedural default or regarding the merits of the claim, unless the requirements of 28 U.S.C. § 2254(e)(2) are met. *Id*. at 382–91.

For purposes of determining whether a petitioner must first meet the prerequisites of § 2254(e)(2), the term "fail" means "the prisoner must be 'at fault' for the undeveloped record in state court." *Williams v. Taylor*, 529 U.S. 420, 432, 434 (2000) ("[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."); *see also Ramirez*, 596 U.S. at 383 (affirming the prerequisites in § 2254(e)(2) apply only "when a prisoner 'has failed to develop the factual basis of a claim'"). "Diligence for purposes of [§ 2254(e)(2)'s] opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the

time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful." *Id.* at 435. "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437; *see also Baja v. Ducharme*, 187 F.3d 1075, 1079 (9th Cir. 1999) (denying evidentiary hearing because petitioner did not comply with state law that required petitioner to come forward with affidavits or other evidence to the extent his claim relied on evidence outside the record).

Hill argues that the requirements of § 2254(e)(2) are not triggered because he diligently pursued his arguments in state court that his initial postconviction counsel rendered ineffective assistance, but the state court denied his request for an evidentiary hearing in this regard. (ECF No. 189 at 8.) Hill was entitled to the effective assistance of counsel during his initial state postconviction proceedings due to his death sentence, *see* Nev. Rev. Stat. § 34.820(1)(a), so Hill, unlike a non-capital petitioner, was entitled to file a second state postconviction petition, wherein he could argue that the ineffective assistance of his initial postconviction counsel amounted to cause to excuse the procedural default of his second postconviction petition. *See Crump v. Warden*, 934 P.2d 247 (Nev. 1997). During his second state postconviction proceedings, Hill requested an evidentiary hearing, but the state denied his petition without holding such a hearing. (*See* ECF Nos. 146-13, 146-28.) Therefore, it is not readily apparent that (1) the requirements of § 2254(e)(2) are triggered or (2) this Court is precluded from holding an evidentiary hearing. However, because the Court is unable to assess whether an evidentiary hearing is necessary independent of its review of the merits of the second-amended petition, the Court denies the motion for evidentiary hearing without prejudice. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record . . .

8

otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). The Court will reassess Hill's motion, as needed, during its merits review.

### B.   Motion to File Additional Responsive Pleading

Hill requests leave of the Court to file a 17-page response to Respondents' surreply, explaining that Respondents "raised several arguments and set forth statements of governing law in its [surreply] that Hill believes he should be permitted to respond to." (ECF No. 207.) Respondents oppose the request, arguing that it is conclusory. (ECF No. 208.) Hill rebuts Respondents' conclusory argument, explaining that his proposed pleading was filed as an attachment to his motion and detailed the new arguments and law that he believes he should be able to respond to. (ECF No. 209.)

Local Rule 7-2(g) states that "[a] party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause." Following a review of Hill's proposed response to the surreply (ECF No. 207-1), the Court finds that good cause exists to grant Hill's motion. The Court will direct the Clerk to file the response to the surreply.

In their opposition to the motion, Respondents state that "[i]f this Court permits Hill to file [a response to the surreply, then] Respondents ask this Court to permit [them] the opportunity to file their own" response to the response to the surreply. (ECF No. 208.) To keep with the spirit of the Court's briefing schedule, giving Respondents the last word, the Court grants Respondents' request. However, it warns that no further briefing will be permitted absent extraordinary circumstances.

## III.   CONCLUSION

IT IS THEREFORE ORDERED that the motion for evidentiary hearing **[ECF No. 189] is denied without prejudice.**

IT IS FURTHER ORDERED that the motion to file an additional responsive pleading **[ECF No. 207] is granted**.

IT IS FURTHER KINDLY ORDERED that Clerk of Court file the response to the surreply [ECF No. 207-1]

IT IS FURTHER ORDERED that Respondents have 30 days from the date of this Order to file their response to the response to the surreply.

DATED: February 26, 2026

_____
KENT J. DAWSON
UNITED STATES DISTRICT COURT

10